UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DYLAN SINN,<br><br>Plaintiff,<br><br>v.<br><br>VERMILLION COUNTY SHERIFF'S DEPARTMENT,<br>MICHAEL HOLTKAMP,<br>JAMES MILLER, SR.,<br>REBECCA HALL,<br>SAMANTHA KUIPER,<br>CHRISTINA MORAN,<br>QUALITY CORRECTIONAL CARE,<br>CHRIS STEPHENSON,<br><br>Defendants. | ) | No. 2:25-cv-00340-JPH-MG |

**Order on Motion to Reconsider, Partial Motion to Dismiss, and Motion for Counsel**

Plaintiff Dylan Sinn filed this civil action about the medical care he received while he was a pretrial detainee at the Vermillion County Jail. The Court screened Mr. Sinn's amended complaint and allowed the following claims to proceed:

- Medical malpractice claims against Defendants Hall, Stephenson, Kuiper, and QCC;
- Negligence claims against Defendants Holtkamp, Miller, Moran, Stephenson, and Vermillion County Sheriff's Department;
- Fourteenth Amendment medical care claims against Defendants Hall, Stephenson, Kuiper, Holtkamp, and Miller;
- Fourteenth Amendment due process claim against Defendant Holtkamp;
- First Amendment retaliation claims against Defendants Stephenson, Moran, and Holtkamp; and
- *Monell* claim against Defendant Vermillion County Sheriff's Department.

Dkt. 37 at 8.

Mr. Sinn asks the Court to reconsider the screening order and to allow a claim to proceed against Jail Commander Derrick Williams for deliberate indifference to Mr. Sinn's medical needs. Dkt. 42. Mr. Sinn also asks the Court to help him recruit counsel. Dkt. 50.

Defendants Holtkamp, Miller, and Moran ask the Court to dismiss the negligence claims against them. Dkt. 45.

For the reasons below, the Court **denies** all three motions.

## I. Motion to Reconsider

Mr. Sinn asserts in his motion to reconsider that his allegations in the amended complaint against Jail Commander Derrick Williams state a claim for deliberate indifference.

In the amended complaint, Mr. Sinn alleges that Mr. Williams responded to Mr. Sinn's grievance dismissively, stating "we go through this same idiotic stuff every time you're here." Dkt. 31 at 3. Mr. Sinn then makes the conclusory statement that Mr. Williams "was deliberately indifferent to the cruel and unusual punishment that his staff was subjecting Plaintiff to," and notes that Williams is no longer a jail commander due to a history of unethical behavior. *Id.* As the Court explained in the screening order, "the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Furthermore, there is no allegation of the content of the grievance, so there is no reasonable inference that Mr. Williams was aware of Mr. Sinn's alleged medical conditions and the staff members' alleged disregard of them.

Because Mr. Sinn did not allege sufficient factual matter to state a claim for deliberate indifference against Mr. Williams, the Court **denies** the motion to reconsider. Dkt. [42].

## II. Motion to Dismiss

Defendants Holtkamp, Miller, and Moran ask the Court to dismiss the negligence claims against them. They argue that, as Indiana state employees, the Indiana Tort Claims Act (ITCA) entitles them to immunity for the state law tort claims. ITCA "governs lawsuits against political subdivisions and their employees." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (citing Ind. Code § 34-13-3-1 *et seq.*). "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014).

Under ITCA, though, Mr. Sinn's negligence claims can proceed against each individual state employee if he alleges "that an act or omission of the employee that causes a loss is (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c)).

Mr. Sinn asserts that his allegations indicate that Defendants' actions were willful and wanton as well as malicious. Additionally, he believes that, as to Defendant Moran, his allegations also support findings that her actions were outside the scope of her employment and calculated for personal benefit. The Court agrees that ITCA does not bar Mr. Sinn's claims.

"A malicious act is 'an intentional, wrongful act performed against another without legal justification or excuse.'" *Higgason v. State*, 789 N.E.2d 22, n.5 (Ind. Ct. App. 2003) (quoting Black's Law Dictionary 969 (7th ed.1999)).

For an act to be willful or wanton, "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Steele v. Knight*, No. 1:13-cv-00982-JMS-DKL, 2016 WL 7117155, at *13 (S.D. Ind. Dec. 7, 2016)

(quoting *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204–05 (Ind. Ct. App. 2011)). "'[W]anton and willful' and 'reckless' seem to imply the same disregard for the safety of others." *Ellis*, 940 N.E.2d at 1205.

Mr. Sinn alleged that, for 20 months, Defendants Holtkamp and Miller knowingly allowed Nurse Kuiper to dispose of Mr. Sinn's medications (causing him to be recharged for them) and to reduce or cancel dosages of his physician-ordered medications. Dkt. 31 at 3. These allegations provide factual support to the assertion that Defendants Holtkamp and Miller acted maliciously, wantonly, and willfully.

Mr. Sinn alleged that Defendant Moran was recruited to join Nurse Kuiper's campaign against Mr. Sinn and that Defendant Moran retaliated against Mr. Sinn by writing him up without any evidence. *Id.* She also allegedly imposed commissary and tobacco restrictions on Mr. Sinn with the sole purpose of inflicting harm on him. *Id.* at 4. These restrictions were contrary to applicable policies and procedures. *Id.* These allegations provide factual support to the assertion that Defendant Moran acted maliciously.

Because ITCA allows tort claims to proceed against state employees where the alleged actions were malicious or willful and wanton, the Court **denies** the motion to dismiss.

### III. Motion to Recruit Counsel

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of

volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Mr. Sinn has attempted to contact multiple attorneys with requests for representation without success. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. He should continue his efforts to find counsel.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt,* 503 F.3d

at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan*, 987 F.3d at 682 (quoting *Pruitt,* 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Mr. Sinn asserts that the issues of this case are complex and involve medical issues, requiring significant research and discovery. He contends that his ability to litigate these issues is limited by his incarceration. He also anticipates needing an expert witness. Mr. Sinn's allegations involve treatment and medications he was given for his psoriasis at the Vermillion County Jail and the alleged retaliatory actions taken against him because he sought medical treatment. Accordingly, many of the pertinent facts are already known to Mr. Sinn—he knows what treatments he was given, and he knows what actions were taken against him. Mr. Sinn does not indicate any difficulty reading, writing, or understanding the English language, so he will be able to review the documents he receives in discovery.

Mr. Sinn also submits that he has had issues using the library, and it appears that the library's computer was non-functioning for a period. Limited law library access is a challenge faced by most incarcerated litigants. Mr. Sinn's evidence indicates that a repair request for the computer had been submitted before Mr. Sinn filed this motion, so it may already be functioning again. Mr. Sinn may file motions for extensions of time when appropriate if he cannot meet a deadline due to limited law library access. *See Decker v. Sireveld*, 109 F.4th 975, 984–85 (7th Cir. 2024) (finding no abuse of discretion when court denied the plaintiff's request for counsel because,

despite being housed in a restricted housing unit with limited law library access, the court explained that it could extend deadlines as needed).

Taken as a whole, the reasons Mr. Sinn presents in support of his request for assistance with recruiting counsel are not persuasive at this point in the litigation. He appears competent to handle the factual and legal questions of this case and present his position to the Court.

Accordingly, the Court **denies without prejudice** the motion to recruit counsel. Dkt. 50.

## IV. Conclusion

Based on the above, the Court **denies** the motion to reconsider, dkt. [42], and **denies** the motion to dismiss, dkt. [45].

Additionally, the motion for assistance recruiting counsel is **denied without prejudice**. Dkt. [50]. The **clerk is directed** to send Mr. Sinn a motion for assistance recruiting counsel form, which he must use if he chooses to renew his motion. The Court will remain alert to changes in circumstances that may warrant reconsideration of the motion, such as a settlement conference or trial.

**IT IS SO ORDERED.**

Date: 10/1/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DYLAN SINN
PLAINFIELD – RDC
RECEPTION DIAGNOSTIC CENTER
Inmate Mail/Parcels
737 MOON ROAD
PLAINFIELD, IN 46168

Brian M. Pierce
Brian M. Pierce, Attorney at Law
brian@brianpiercelaw.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com